No. 2812
Second Circuit

FIRMENT v. EICHER-WOODLAND LBR. COMPANY
PURDY-HESS CO., Intervenor

(Jan. 28, 1927. Opinion and Decree.)
(Feb. 24, 1027. Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Estoppel—Par. 41.
Where A sells ties to B, allows B to hold out sufficient money to cover the cost of the stumpage, and B sells to C allowing C to hold out the same amount for that purpose, D, the party who sold the stumpage, in an intervention, in a suit between A and C for the amount so held out can recover the cost of the stumpage; A having acquiesced by allowing this money to be held out.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. R. C. Culpepper, Judge.

Action by P. E. Firment against Eicher-Woodland Lumber Company, Inc., Purdy-Hess Company, intervenor.

There was judgment for plaintiff and intervenor and defendant appealed.

Judgment reversed and rendered for intervenor.

Hakenyos, Provosty & Staples, of Alexandria, attorneys for plaintiff, appellee.

J. C. Cappel, of Alexandria, attorney for Purdy-Hess Company, intervenor, appellant.

Bruton T. Dawkins, of Alexandria, attorney for defendant, appellant.

ODOM, J. The Purdy-Hess Co., a foreign corporation, owned a tract of land in the Parish of Avoyelles on which there is or was timber suitable for cross-ties. It had an arrangement with one Leonce Laborde to the effect that Laborde was to make cross-ties of the timber on the land and was to pay 20 cents per tie for all ties made. Laborde and the plaintiff, P. E. Firment, entered into an agreement to the effect that Laborde was to make ties of the Purdy-Hess Co. timber, furnish his time and labor, superintend the making of the ties and have them hauled and delivered at stations on the railroad ready for delivery to a purchaser, and the plaintiff, Firment, was to advance all funds neces-

sary for the making of the ties, including the expense for stumpage, making and hauling the ties, and, as a consideration for such advances was to receive 10 per cent of the sum advanced; and, in order that he might recover the sums advanced plus 10 per cent, the proceeds of all ties made by Laborde were to go into his hands; and when a sale was made and the price of the ties collected, Firment deducted all sums advanced by him, plus 10 per cent, and paid the balance, if any, to Laborde.

Under this arrangement Laborde made 2,892 ties from timber on the Purdy-Hess Co. land and hauled them to the railroad so that they could be sold and delivered These ties were sold on the railroad to one George L. Cleveland. Cleveland in turn sold them to the Eicher-Woodland Lumber Co., Inc., the defendant in this case, and the Eicher-Woodland Lumber Co., Inc., sold them to the Southern Pacific Railroad Co.

Previous to the sale of the ties to Cleveland, he was notified by Randolph, the agent of Purdy-Hess Co., that the stumpage had not been paid to Purdy-Hess Co., and that unless the stumpage was paid the ties would be seized; whereupon Cleveland agreed that he would see that the stumpage was paid.

Randolph, it seems, learned that Cleveland was to sell the ties to the defendant Eicher-Woodland Lumber Co., Inc., and he likewise notified said defendant that the stumpage had not been paid.

Having received notice from Randolph that Purdy-Hess Co. had not been paid the stumpage, Cleveland, when he bought the ties, paid Firment, the plaintiff, the price of the ties less the stumpage, which amounted to $578.40.

When Cleveland sold the ties to Eicher-Woodland Lumber Co., Inc., he was paid the price of the ties, less $578.40 for the stumpage.

Subsequent to the date on which Cleveland sold the ties to Eicher-Woodland Lumber Co., Inc., Firment, the plaintiff, made demand on Cleveland and the Eicher-Woodland Lumber Co., Inc., for the amount which had been retained for the stumpage, claiming that Firment had paid the stumpage; and he made and tendered his affidavit to that effect.

All parties recognized and conceded that the stumpage should be paid. It was immaterial to Cleveland and the defendant as to who should receive the amount reserved for the stumpage, and Firment was so informed; but they recognized that Purdy-Hess Co. should be paid by someone.

As stated, the defendant, Eicher-Woodland Lumber Co., Inc., had in its hands $578.40 which had been reserved and which amount it was willing to pay to the proper party.

Cleveland being without further interest in the matter, drew a sight-draft for said sum on the defendant, Eicher-Woodland Lumber Co., Inc., in favor of N. S. Scott, attorney for the plaintiff, Firment, with this notation:

"This draft is assignment of balance due for ties bought of Firment and sold to E. W. Lumber Co."

This draft was transferred by endorsement to Firment. The defendant, Eicher-Woodland Lumber Co. refused to accept and pay the draft. Whereupon Firment brought this suit against it, alleging that said draft represented the balance due on ties which he had sold Cleveland and which Cleveland in turn had sold to the defendant.

The Purdy-Hess Co. intervened, claiming that it had not been paid the stumpage value of the ties and that the balance in the hands of the defendant should be paid to it.

The defendant admitting that it had in its hands the said sum and alleging that it had no interest in the controversy, deposited the said sum in the registry of the court, in accordance with the provisions of Act 123 of 1922, and, by order of court, was relieved from further liability.

The issue is therefore narrowed down to the question whether plaintiff, Firment, or the intervenor, Purdy-Hess Co. is entitled to the sum in the registry of the court.

There is no question but that the ties were made of timber belonging to Purdy-Hess Co., and it is not disputed that it should be paid the stumpage, if it has not already been paid; but the plaintiff grounds his action upon the proposition that he had bought and paid for said ties and that there was nothing due upon them.

Section 7 of his petition reads as follows:

"That said defendant was duly presented with affidavits that your petitioner had bought and paid for said, ties, which were delivered to said George E. Cleveland, as required by law, and that there was nothing further due upon said ties except said sum of $578.40 due by said Cleveland to your petitioner, as the purchase price thereof."

In what is termed an answer to the petition of Eicher-Woodland Lumber Co., Inc., calling upon him to litigate with Purdy-Hess Co. the question as to who is entitled to said sum, plaintiff sets up that he bought said ties in good faith from Leonce Laborde, paying the full price thereof, and that he sold and delivered the same to Cleveland in good faith, without notice that anything was due on the ties, and that Laborde assured him that the stumpage had been paid, and that if said Laborde owed Purdy-Hess Co. for the stumpage its vendor's privilege thereon was lost by the subsequent sale to Cleveland and by Cleveland to Eicher-Woodland Lumber Co., Inc.

Counsel for plaintiff, in brief, cite the Code and a long list of decisions to the effect that the vendor's privilege does not follow a chattel into the hands of third persons nor does it follow and attach to the proceeds of the sale.

But Pudy-Hess Co. is not claiming a privilege on the ties, nor a privilege on the proceeds, but is claiming the amount held out by Cleveland for the stumpage, he havin been notified prior to his purchase of the ties that the stumpage had not been paid. Therefore the question of privilege does not arise.

If, as plaintiff alleges, he had bought the ties from Laborde in good faith without notice that Purdy-Hess Co. had not been paid and had transferred them to an innocent third person, Purdy-Hess Co. could not be heard to assert a vendor's privilege on either the ties or the proceeds. But this is not the situation here.

In the first place, plaintiff did not purchase the ties from Laborde and was never the owner of them. Under the facts disclosed as above outlined, Laborde was the owner of the ties at the time they were hauled and placed upon the railroad right-of-way. While plaintiff alleged and testified that he purchased them from Laborde, yet his testimony as a witness shows that he did not purchase them, for he was asked this question:

"Will you state to the court what your agreement was with regard to the ties?"

·And ·he said: ·

"I paid him (Laborde) the stumpage for the ties; he hauled them to the station; and I·. paid for the making, hauling and everything; Laborde never handled a nickel;· and; the money that I put into the business was myself (mine) alone; I was to get the whole amount, plus 10 per cent, and· Laborde would get the rest."

In other words, he financed the making of· ;the ties and when they were sold he got back what he had advanced plus 10 per cent and Laborde got the balance.

' His testimony on that point is exactly in accord with that of Laborde. Plaintiff's connection with the transaction as detailed by him and Laborde did not make him the owner, of the ties. He did not employ Laborde to make them. He does not claim that,, nor does he say that there was ever any formal transfer of them to him at a fixed price which he paid or agreed to pay. The ties were therefore the property of Laborde.

·Plaintiff alleged that he sold the ties to Cleveland; but Cleveland disputes that. He says he purchased them from Laborde and that he did not know plaintiff was in the transaction until after the ties were loaded, when Laborde asked him over the telephone to honor plaintiff's draft for the sum of $1919.00, which he agreed to do.

Cleveland says plaintiff did draft on him through the Marine Bank & Trust Company for the said amount and that he paid· the draft with his check.

The testimony satisfies us that Laborde did make the sale to Cleveland but' with plaintiff's acquiescence.

Plaintiff says he paid the stumpage for these ties but paid it to Laborde upon the assumption and belief that Laborde was agent for Purdy-Hess Co. But granting

that he did pay the stumpage to Laborde, the situation is not saved for him; for as already stated, Laborde was the owner of the ties and if he did not pay the stumpage to Purdy-Hess Co. the amount was due it when the ties were sold to Cleveland. The testimony shows that Laborde did not pay Purdy-Hess Co. for the stumpage. He admitted, in the presence of Mr. Hess, Mr. Randolph, Mr. Cappel and the plaintiff, that he had not paid it. As a witness for plaintiff he did not say he had paid it. When Cleveland told him that Randolph, agent. for Purdy-Hess Co. claimed that the stumpage had not been paid and that Cleveland would pay the price of the ties less the stumpage, Laborde made no protest and told Cleveland to pay Firment's draft for the full amount less the stumpage.

Firment unquestionably knew that Purdy-Hess Co. had not been paid and acquiesced in the holding out of the amount due it, ·for the draft which he drew on Cleveland was for $1919.00, which included $10.00 for loading, and was for the full value of the ties, less $578.40 for the stumpage.

The situation therefore is that when Cleveland purchased the ties he held out for the stumpage and when he sold them to Eicher-Woodland Lumber Co., Inc., the same amount was held out for the same purpose, and that is the amount now in dispute.

Purdy-Hess Co. is entitled to the amount thus held out and now in the registry of the court. The District Court so held on the first trial; but the case was reopened to take testimony on the question as to whether Firment or Laborde was the owner of the ties sold to Cleveland. There was no testimony adduced on that point except that which is stated above. But the

court on final hearing ordered the amount in controversy paid to the plaintiff. We think that was error.

For the reasons assigned, it is therefore ordered and decreed that the judgment appealed from be reversed, and it is now ordered and decreed that plaintiff's demands be rejected and his suit dismissed; and further ordered that the sum of five hundred and seventy-eight and 40-100 dollars which was deposited in the registry of the court by the Eicher-Woodland Lumber Co., Inc., for the stumpage on the cross-ties, be paid by the clerk of court to the Purdy-Hess Co. All costs to be paid by plaintiff.